**P. STOLZ FAMILY PARTNERSHIP, L.P., on behalf of itself and others similarly situated, Plaintiffs,**

v.

**Steven B. DAUM, Paula B. Daum, Philip Spies, and Smart World Technologies, LLC, Defendants.**

**No. 01 Civ. 1254(JSR).**

United States District Court, S.D. New York.

Sept. 28, 2001.

872

Paul Wexler, Peter D. Morgenstern, Bragar, Wexler, Eagel & Morgenstern, L.L.P., New York City, for plaintiffs.

Barry S. Pollack, Dechert Price & Rhoads, Boston, MA, Debra D. O'Gorman, Dechert Price & Rhoads, New York City, for defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

In this putative class action, plaintiff P. Stolz Family Partnership, L.P. ("P.Stolz") alleges, in Count I of the Amended Complaint, that the defendants, Smart World Technologies, LLC ("Smart World") and three of its officers, made a public offering of unregistered securities, in violation of section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and in Count II, that the defendants made material misrepresentations in connection with the prospectus issued on that public offering, in violation of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2). The individual defendants now move to dismiss all claims against them.[1]

The gist of the allegations, briefly stated, is as follows. At all times relevant, Smart World was engaged in the business of providing Internet access to subscribers. Beginning around November 1999, Smart World offered and sold "membership interests" in the company, in what plaintiff alleges was an unlawful public offering of unregistered securities. Plaintiff further alleges that, in soliciting these sales, Smart World represented, orally but in conjunction a written prospectus, that it had entered into agreements with an investment bank to secure $30 million for the company by mid-February, 2000 and to raise an additional $50 million or more through an initial public offering ("IPO") of its securities in the second quarter of 2000, both of which representations were false and misleading. Plaintiff claims that, in reliance on these misrepresentations, it

purchased $250,000 worth of unregistered Smart World "membership interests" on or about April 28, 2000.

■ The liability of the individual defendants, Steven B. Daum, Paula B. Daum, and Philip Spies, is alleged to derive, pursuant to section 15 of the Securities Act, 15 U.S.C. § 77o, from their roles as "control persons" of Smart World. The Amended Complaint alleges that at all relevant times defendant Steven B. Daum was the Chairman and Chief Executive Office of Smart World, defendant Paula B. Daum was its Chief Operating Officer and Manager, and defendant Philip Spies was its Chief Financial Officer. See Amended Complaint ¶¶ 3–5. However, in order to hold an individual liable as a "control person" under section 15, a complaint must allege, at a minimum, "meaningful culpable conduct [by that individual] beyond mere status as a director or officer." Kane v. Wichita Oil Income Fund, 1991 WL 233266, at *7 (S.D.N.Y. Oct. 29, 1991); see also Demaria v. Andersen, 153 F.Supp.2d at 314 (S.D.N.Y.2001) (plaintiff must set forth "particularized facts as to the controlling person's culpable participation in the violation of the controlled person").

■ With respect to defendant Spies, the Amended Complaint does not remotely meet this standard. As to Count I, there is no allegation that this financial officer had anything to do with the decision not to register the securities. As to Count II, the sole reference to Spies is his signature on certain financial projections attached as Exhibit A to the Amended Complaint; but nowhere is it alleged that he knew of or was involved in the oral misrepresentations on which Count II depends.[2] Ac-

---

1. On June 29, 2000, Smart World filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. On May 2, 2000 the Bankruptcy Court for the Southern District of New York approved the lifting of automatic stay so as to permit Smart World

to be named as a defendant in this action. See Amended Complaint ¶ 29.

2. Additionally, for independent reasons described below, Count II must be dismissed as to all defendants.

cordingly, Spies must be dismissed from this case.

■ With respect to defendants Steven Daum and Paula Daum it is a closer question. Even though the Amended Complaint largely fails to particularize any individual acts of culpable misconduct on their part, it does reference the prospectus used to solicit the sales here at issue, which contains the following language:

> Our chief executive officer and chief operating officer, constituting the majority of the board managers, control Smart World Technologies, LLC. Steven Daum, Chairman of the Board of Managers and Chief Executive Officer and Paula B. Daum, Manager and Chief Operating Officer, through their substantial ownership of Smart World Communications, Inc. own approximately 70% of the outstanding membership unit, including options and outstanding warrants on a fully diluted basis. Consequently, as a practical matter, our executive officers and directors, as a group, will be able to control all matters requiring approval by our members, including the election of our Board Managers, our management policy and all fundamental company actions, including mergers, substantial acquisitions and dispositions of assets.

*See* Ex. B to Defendants' Memorandum of Law in Support of the Individual Defendants' Motion to Dismiss, ("Defs'.Mem.") Read most favorably to plaintiff, this language conveys to a reasonable investor that the investor can rely on Steven Daum and Paula Daum to "control" all "fundamental company actions," including those here at issue. Accordingly, the "control person" liability of Steven Daum and Paula Daum is adequately alleged, and the Court must therefore consider the other grounds

on which the claims against them are challenged.

■ With respect to the claim of unlawful sale of unregistered securities set forth in Count I, defendants contend that the offering materials state that the offering is entitled to an exemption from registration and that plaintiff's failure to set forth in the Amended Complaint why Smart World's offering fell outside the scope of any applicable exemption amounts to a failure to state a claim. *See* Defs'.Mem. at 13–14. Defendants, however, have it backwards. It is defendants who bear the burden of establishing that a publicly-offered security is entitled to an exemption from registration, *see S.E.C. v. Ralston Purina Co.*, 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953), and a defendant cannot shift this burden by requiring a complaint not only to allege lack of registration but also lack of any arguable exemption.

■ Defendants also contend that Count I is barred by the one-year statute of limitations applicable to such a claim, *see* 15 U.S.C. § 77m, because plaintiff sent Smart World the funds for purchase of the securities on February 8, 2000, *see* Defs.' Mem. at 12, and executed the subscription agreement on February 17, 2000, *see* Amended Complaint ¶ 19, 27, but did not file this lawsuit until February 20, 2001. However, the subscription agreement pursuant to which plaintiff purchased its membership interests, expressly permitted Smart World to reject the proffered investment for any reason prior to Smart World's execution of the certificate that formally "admitted" the investor to "membership;" and in this case the certificate was not executed by Smart World until late April, 2000. *See* Ex. C. to Defs.' Mem. (subscription agreement); Ex. C. to Wexler Affidavit certificate of admission. Accordingly, the claim is timely.[3]

---

**3.** Moreover, even if Count I were not otherwise timely, plaintiff alleges that it did not become aware that Smart World's claim of

exemption was false until after Smart World filed for bankruptcy in late June, 2000.

With respect to Count II, however, defendants have a better argument. That Count alleges that the oral representations that defendants made in conjunction with the prospectus—to the effect that Smart World's agreements with investment bankers would result in $30 million in financing by mid-February 2000 and an IPO during the second quarter of 2000 projected to raise at least another $50 million—had been rendered false (by delays and other problems) by the time plaintiff made its purchase and yet were not corrected. But the prospectus itself incorporated by reference in ¶ 19 of the Amended Complaint had warned of such a possibility. It expressly stated that:

> No assurance can be given, nor has any been given, that any of the Financing transactions or the Expansion will be consummated. Even if consummated, no assurance can be given that the Expansion will be successful or the Financing will generate the capital sufficient to fund the Expansion, the needs of the Company in connection therewith, or the operations of the Company on a going forward basis. It is understood that if the Financing and the Expansion are not successful, there likely will be no funds available to refund any of the money invested in the Company by undersigned. This is a speculative investment which would result in the loss of investment in its entirety.

Ex. C. to Defs'.Mem. (Prospectus) at § 2(a). Such clear cautionary statements erase any claim plaintiff might otherwise have regarding the alleged misrepresentations on which Count II is premised. *See Hunt, IRA v. Alliance N. Am. Government Income Trust, Inc.,* 159 F.3d 723, 728 (2d Cir.1998).

Amended Complaint ¶ 30. On these allegations, equitable tolling would apply to prevent dismissal of the claim on the basis of the

Accordingly, for the foregoing reasons, Count I is hereby dismissed as to defendant Philip Spies, and Count II is dismissed in its entirety. The remaining claim against the remaining defendants will proceed on the schedule previously set by the Court in its scheduling order.

SO ORDERED.

statute of limitations. *See Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1055 (2d Cir.1969).